United States Court of Appeals
For the Eighth Circuit

_____

No. 22-2183
_____

Matthew A. Kezhaya,

*Movant - Appellant*,

v.

City of Belle Plaine, Minnesota,

*Defendant - Appellee.*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: May 11, 2023
Filed: August 25, 2023
_____

Before SMITH, Chief Judge, COLLOTON and BENTON, Circuit Judges.
_____

COLLOTON, Circuit Judge.

Attorney Matthew Kezhaya appeals an order of the district court[*] sanctioning him and his co-counsel under Federal Rule of Civil Procedure 11. We conclude that there was no abuse of discretion, and therefore affirm the order.

---

[*]The Honorable Wilhelmina M. Wright, United States District Judge for the District of Minnesota.

Appellate Case: 22-2183    Page: 1    Date Filed: 08/25/2023 Entry ID: 5309997

I.

Kezhaya represented The Satanic Temple, Inc., in its lawsuits against the City of Belle Plaine, Minnesota. The Temple sued the City on April 25, 2019, claiming that the City opened a limited public forum for a Christian monument, but closed the forum to exclude a Satanic monument. The Temple alleged violations of state and federal constitutions, as well as breach of contract and promissory estoppel.

Both parties moved for judgment on the pleadings. On July 31, 2020, the district court granted the City's motion in part and dismissed nine of the Temple's ten counts "without prejudice" for failure to state a claim. The court permitted the Temple's promissory estoppel claim to proceed.

On December 1, 2020, after the district court's deadline to amend pleadings, the Temple moved for leave to amend its complaint. The Temple's proposed amendment sought to reassert its previously dismissed constitutional claims based on the Free Exercise Clause, Free Speech Clause, and Equal Protection Clause. The Temple also sought to add new counts alleging violations of the Establishment Clause and the Due Process Clause.

On January 26, 2021, a magistrate judge denied the Temple's motion for leave to amend, concluding that (i) the Temple had failed to show "good cause" to amend after the deadline, (ii) the Temple's proposed amendments were futile on the reasserted constitutional claims, and (iii) it would be inappropriate to allow the Temple to assert the new constitutional claims at the late stage of the litigation. The magistrate judge also denied the Temple's request to dismiss voluntarily its remaining promissory estoppel claim and to reassert its constitutional claims in a second lawsuit. The judge concluded that the City "would in fact be severely prejudiced if [the Temple] were permitted to reassert its claims anew in a second round of litigation."

Before objecting to the magistrate judge's order, the Temple filed a second lawsuit in the district court on February 4, 2021. The second action reasserted the rejected constitutional claims, and added state constitutional claims based on provisions analogous to the federal Establishment Clause and Equal Protection Clause. The complaint acknowledged that its core factual allegations were the same as those underlying the Temple's first lawsuit, and that a version of the complaint had been proposed and rejected as an amended complaint. The City moved to dismiss the complaint as barred by *res judicata* and for failure to state a claim. The City also moved for Rule 11 sanctions against Kezhaya.

On February 5, 2021, the City moved for summary judgment on the Temple's remaining promissory estoppel claim in the first lawsuit. On February 9, 2021, the Temple objected to the magistrate judge's order of January 26, 2021, regarding the motion for leave to amend. The Temple argued that it was "legal error" for the magistrate judge to determine that the amended complaint was "futile," but argued that the motion for leave to amend was now "moot" because the Temple had filed a second lawsuit.

On September 15, 2021, the district court issued a combined order addressing both lawsuits. In the first lawsuit, the court affirmed the magistrate judge's order of January 26, 2021. The court ruled that the Temple failed to demonstrate "good cause" to amend its pleading after the deadline, and that the Temple's proposed amendments to the constitutional claims were futile. The court also granted summary judgment for the City on the Temple's promissory estoppel claim.

In the second lawsuit, the district court granted the City's motion to dismiss and its motion for sanctions. The court cited both the doctrine of *res judicata* and the related rule against duplicative litigation. The court emphasized that rather than appeal the denial of the motion to amend in the first lawsuit, the Temple filed a "second frivolous lawsuit" that wasted the resources of the parties and the court.

The City sought $33,886.80 in attorney's fees incurred by responding to the complaint in the second lawsuit and preparing the motion for sanctions. The court concluded that the Temple's behavior, "including its repeated disregard of court orders, suggests that a mere reprimand from the Court would be insufficient to deter similar misconduct in the future." The court determined that the rates charged by the City's counsel were reasonable, but observed that a portion of the work was duplicative of the first lawsuit, and that the issues unique to the second lawsuit were not complex, novel, or difficult. The court thus reduced the requested amount by fifty percent, and ordered the Temple's counsel to pay the City $16,943.40 under Rule 11(c).

Kezhaya appeals the sanctions order. He argues that the district court abused its discretion by (i) imposing sanctions, (ii) failing to consider non-monetary sanctions, and (iii) granting an arbitrary amount of sanctions.

II.

We review a district court's determinations concerning Rule 11 under an abuse-of-discretion standard. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990). As determinations under Rule 11 involve "fact-intensive, close calls," we give deference to the determination of the court on the front lines of litigation. *Id.* at 404 (internal quotation omitted). A district court abuses its discretion if it bases its ruling on a clearly erroneous assessment of the evidence or an erroneous view of the law. *Id.* at 405.

Rule 11 sanctions may be warranted when a pleading is "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). Rule 11 also authorizes sanctions if a pleading includes claims, defenses and other legal contentions that are not warranted by existing law, a nonfrivolous argument for extending, modifying, or

reversing existing law, or a nonfrivolous argument for establishing new law. *Id.* 11(b)(2). A sanction imposed under Rule 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." *Id.* 11(c)(4).

Kezhaya contends that the district court imposed sanctions based on an erroneous application of the doctrine of *res judicata*. He further argues that even if his legal reasoning was incorrect, the sanctions order confused an "unpersuasive" argument with a "sanctionable" one. He contends that if his conduct warranted sanctions, then a non-monetary sanction such as a reprimand would have sufficed.

In dismissing the Temple's second lawsuit and imposing sanctions, the court invoked both *res judicata* and the related rule against duplicative litigation or claim splitting. *See Curtis v. Citibank, N.A.*, 226 F.3d 133, 138-40 (2d Cir. 2000). We agree that the Temple's second lawsuit ran afoul of the rule against duplicative litigation, because the Temple had "no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." *Id.* at 139.

Like *res judicata*, the rule against duplicative litigation seeks to promote judicial economy and to protect parties from vexatious and duplicative litigation over the same subject matter. *Id.* at 138-39. But unlike *res judicata*, which requires entry of a final judgment before it applies, the rule against duplicative litigation permits the dismissal of a duplicative action while the first action remains pending. *Id.* at 138, 140. The analysis considers whether the parties to the actions are the same and whether the claims arise from the same nucleus of operative fact. *Scholz v. United States*, 18 F.4th 941, 952 (7th Cir. 2021); *see Lane v. Peterson*, 899 F.2d 737, 742 (8th Cir. 1990).

The test for duplicative litigation is satisfied here. The Temple attempted to maintain two actions against the City based on the same facts. The claims brought

Appellate Case: 22-2183   Page: 5   Date Filed: 08/25/2023 Entry ID: 5309997

in the second action were available at the outset, and were either brought in the first action or could have been included in the first lawsuit. The district court thus properly dismissed the Temple's second action as duplicative. *See Scholz*, 18 F.4th at 950-52; *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 840-43 (11th Cir. 2017); *Katz v. Gerardi*, 655 F.3d 1212, 1217-19 (10th Cir. 2011); *Curtis*, 26 F.3d at 140.

Kezhaya contends that the district court's conclusion on duplicative litigation was erroneous. He argues that the court's initial dismissal "without prejudice" of the Temple's constitutional claims provided explicit preauthorization to bring those claims in a second lawsuit. He maintains that without a second lawsuit, the Temple lacked a full and fair opportunity to litigate its claims.

Under the circumstances of this case, we disagree with Kezhaya's contention about the righteousness of a second lawsuit. For the claims dismissed "without prejudice" in the first lawsuit, Kezhaya and the Temple made a strategic choice to seek leave to amend the complaint to correct the deficiencies identified in the dismissal order. The magistrate judge concluded that the Temple failed to show good cause for an untimely motion, and that its amended constitutional claims were futile on the merits in any event, because they could not withstand a motion to dismiss under Rule 12(b)(6). The Temple objected to the magistrate judge's futility determination as "legal error," but the district court affirmed the ruling. The Temple thus had a full and fair opportunity to litigate the claims dismissed in the first lawsuit.

For the constitutional claims not included in the original complaint, the Temple's claims and the facts underlying those claims were available when the original complaint was filed. It "is immaterial that the plaintiff in the first action sought to prove the acts relied on in the second action and was not permitted to do so because they were not alleged in the complaint and an application to amend the complaint came too late." *Poe v. John Deere Co.*, 695 F.2d 1103, 1107 (8th Cir. 1982) (quoting Restatement (Second) of Judgments § 25, cmt. b (Am. L. Inst. 1982)).

Requiring the Temple to bring all claims in a timely manner does not constitute a denial of a full and fair opportunity to litigate them. *Id*. at 1107-08; *Curtis*, 226 F.3d at 140.

Insofar as Kezhaya and the Temple disagreed with the magistrate judge's ruling on leave to amend, their recourse was to appeal to the district court (and potentially to the court of appeals), not to start a new lawsuit. *Curtis*, 226 F.3d at 140; *see Poe*, 695 F.2d at 1107. The Temple made a choice to seek leave to amend, and it was not entitled to a second opportunity to litigate the rejected claims in a different lawsuit. *Hatch v. Trail King Indus., Inc.*, 699 F.3d 38, 45 (1st Cir. 2012). The district court properly criticized the Temple's effort to use duplicative complaints to evade the magistrate judge's ruling or to expand its procedural rights. *Curtis*, 226 F.3d at 140; *Walton v. Eaton Corp.*, 563 F.2d 66, 71 (3d Cir. 1977).

Kezhaya suggests that he reasonably relied on *Kulinski v. Medtronic Bio-Medicus, Inc.*, 112 F.3d 368 (8th Cir. 1997), to file a second lawsuit reasserting claims that initially were dismissed "without prejudice." In *Kulinski*, a district court dismissed the plaintiff's first complaint without prejudice for lack of subject matter jurisdiction. *Id.* at 370. The court then denied a motion for leave to amend the complaint because the court of appeals had directed dismissal of the complaint for lack of jurisdiction. *Id.* This court held that the denial of leave to amend the original complaint did not preclude the plaintiff from filing a new complaint alleging a different legal theory and jurisdictional basis. *Id.* at 373. *Kulinski* expressly distinguished prior decisions in which a first complaint was adjudicated on the merits, and declined to "contort the district court's denial of Kulinski's proposed amended complaint into a denial on the merits." *Id*.

By contrast, the magistrate judge in this case denied the Temple's motion for leave to amend on the merits as futile, as well as untimely, before Kezhaya and the Temple filed a second lawsuit. A court's determination that a proposed amendment

-7-

to a complaint would be futile operates as a ruling on the merits of the proposed claim. *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 764 F.3d 1327, 1344 (11th Cir. 2014); *see A.H. v. St. Louis County*, 891 F.3d 721, 730 (8th Cir. 2018); *Knapp v. Hanson*, 183 F.3d 786, 790 (8th Cir. 1999). The distinction from *Kulinski* is readily apparent, and counsel's asserted reliance on that precedent is not persuasive.

Kezhaya next challenges the district court's decision to impose a monetary sanction rather than a lesser sanction such as a reprimand. In imposing sanctions, the district court emphasized the "waste of resources" resulting from Kezhaya's improper filing of a "second frivolous lawsuit." The court stressed that by foregoing an appeal of the denial of leave to amend, the Temple and Kezhaya did not even attempt to pursue the proper avenue for litigation. The court observed that the magistrate judge expressly rejected the Temple's request to dismiss voluntarily its promissory estoppel claim and to reassert its constitutional claims in a second lawsuit. The magistrate judge stated that the City would "be severely prejudiced" if the Temple were permitted to do so. The evidence thus supports the district court's conclusion that more than a "mere reprimand" was warranted to deter repetition of the same or similar conduct.

Kezhaya contends that even if a monetary sanction was justified, the district court erred in awarding fees. He asserts that because the City maintains insurance coverage for attorney's fees, the City did not "incur" fees that could be awarded under Rule 11.

Kezhaya focuses on the word "incurred," but Rule 11(c)(4) permits a sanction of "attorney's fees and other expenses *directly resulting* from the violation." Fed. R. Civ. P. 11(c)(4) (emphasis added). The City submitted proof of its attorney's fees directly resulting from the Temple's second lawsuit. Even assuming that an insured party does not bear the costs of coverage through the payment of insurance premiums,

-8-

Rule 11 does not require the City to prove that it ultimately bore the cost of the legal services at issue.

Rule 11(c)(2) also allows for the award of attorney's fees "incurred for the motion" seeking sanctions, Fed. R. Civ. P. 11(c)(2), and Kezhaya argues that those fees should not be recoverable if funded by insurance. Kezhaya points to the definition of "incur" in Black's Law Dictionary: "[t]o suffer or bring on oneself (a liability or expense)." But this definition encompasses the presence of a liability, and a liability arose when the City's attorneys charged fees for preparing the motion for sanctions. Even if the City's insurance carrier ultimately paid the fees, the fees were "incurred" for the motion and could be awarded under Rule 11(c)(2).

Kezhaya next argues that the district court abused its discretion by ordering sanctions without a detailed explanation to support the amount of sanctions. Rule 11 permits the award of "reasonable" attorney's fees incurred for the motion seeking sanctions and directly resulting from the violation of Rule 11. Fed. R. Civ. P. 11(c)(2), (4).

In deciding the amount to award, the court determined based on its experience that the rates charged by the City's attorneys were reasonable and "far below prevailing market rates" in the district. The court examined the work performed and did not authorize a blank check: after reviewing the billing records, the court reduced the City's requested amount by fifty percent based on duplicative legal work and the straightforward nature of the task. According due deference to the district court based on its familiarity with the litigation, we see no abuse of discretion in the court's conclusion that an award of $16,943.40 was appropriate.

For the foregoing reasons, the order of the district court is affirmed.

_____